UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CRAIG OHLENDORF,

NO. CIV. S-11-293 LKK/EFB

    Plaintiff,

  v.

AMERICAN BROKERS CONDUIT,        O R D E R
et al.,

    Defendants.

_____/

    This case arises from the foreclosure of Plaintiff's property located at 795 Quartz Mine Road in Newcastle, California. Plaintiff Craig Ohlendorf has filed suit against ten named defendants based on thirteen causes of action, which include violations of the Homeowners Equity Protection Act, the Real Estate Settlement Procedures Act, the Truth in Lending Act, and the Fair Credit Reporting Act.

    Before the court are motions to dismiss Plaintiff's complaint, filed by the following Defendants: (1) American Home Mortgage Servicing, Inc. ("AHMSI"), Power Default Services, Inc. ("PDSI"),

1

1  and Deutsche Bank National Trust Company ("Deutsche"), ECF No. 12;

2  (2) LSI Title Company ("LSI"), ECF No. 15; and (3) T.D. Service

3  Company ("T.D."), ECF No. 37.[1]  Plaintiff has filed oppositions to

4  each motion to dismiss.  Pl's Opp'ns, ECF Nos. 19, 28, 42.  The

5  court concluded that oral argument was not necessary in this

6  matter, and decides the motions on the papers.  See E.D. Cal. Local

7  Rule 78-230(g).

**I. BACKGROUND**

**A. Prior Related Case**

10      On July 29, 2009, Plaintiff Craig Ohlendorf filed an action in

11 this court arising from the foreclosure of Plaintiff's property at

12 795 Quartz Mine Road, in New Castle, California.  See No. CIV.

13 2:09-cv-02081, ECF No. 1 (Pl's Compl.).  Plaintiff's Complaint

14 named a number of defendants, including American Home Mortgage

15 Servicing, American Brokers Conduit, AHMSI Default Services, Inc.,

16 and Mortgage Electronic Registration Systems, Inc., and was based

17 on causes of action arising under the Truth in Lending Act

18 ("TILA"), the Real Estate Settlement Procedures Act ("RESPA"), and

19 various state statutes and common law theories.  Id. at 1.

---

22      [1] Although Defendant American Brokers Conduit ("ABC"), a
wholly owned subsidiary of American Home Mortgage Corp., was named
23 in a summons in this case, ECF No. 5, the docket does not indicate
that the summons against ABC was returned executed.  ABC has not
24 appeared.  Summons issued as to Defendants Mortgage Electronic
Registration Systems, Inc. ("MERS") and Option One Mortgage
25 Corporation ("Option One") were returned executed, see ECF Nos. 33,
34, but MERS and Option One have not filed answers to the
26 complaint, nor do they join in the instant motions to dismiss.

1      Defendants American Home Mortgage Servicing, AHMSI Default

2 Services, Inc., and Mortgage Electronic Registration Systems, Inc.

3 filed a motion to dismiss Plaintiff's Complaint.  Id., ECF No. 9

4 (Defs' Mot.).  In response, Plaintiff filed an amended complaint

5 which, amongst other changes, added Deutsche Bank National Trust

6 Company as a defendant.  Id., ECF No. 17 (Pl's Am. Compl.).

7      Defendants filed a motion to dismiss Plaintiff's First Amended

8 Complaint, id., ECF No. 21 (Defs' Mot.), which this court granted

9 in part and denied in part, id., ECF No. 43 (Order).

10      On April 28, 2010, Plaintiff filed a second amended complaint,

11 in which he abandoned his federal claims.  Id., ECF No. 44 (Pl's

12 Sec. Am. Compl.).  The court then dismissed Plaintiff's Second

13 Amended Complaint for lack of subject matter jurisdiction.  Id.,

14 ECF No. 53 (Order).

15 **B. Factual Allegations**[2]

16      Plaintiff is facing the loss of his home through foreclosure

17 initiated and advanced by Defendants.  See 2:11-cv-00293, Pl's

18 Compl., ECF No. 2, at 4, ¶ 20.

19      The foreclosure being challenged in this action is based upon

20 a Deed of Trust and a Note in the mortgage that "was flawed at the

21 date of origination of the loan."  Id. at ¶ 21.  Specifically,

22

---

23     [2] These allegations appear in the Plaintiffs' Complaint, ECF
No. 2, unless otherwise specified.  The allegations are taken as
24 true for purposes of this motion only.  See Erickson v. Pardus, 551
U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). The complaint
25 is difficult to understand.  The court's summary below is the best
these chambers can do.

26

1    unbeknownst to the Plaintiff, the loan papers he signed "were
2    processed with an inflated appraisal and inflated income," "without
3    his consent or knowledge of the terms and conditions of the
4    contract."  <u>Id.</u> at 7, ¶ 29.

5        Plaintiff "called the purported lender/servicer of the subject
6    mortgage to advise [them of] his financial situation and to request
7    assistance in the form of a repayment plan or other modification
8    relief," but "the purported lender/servicer failed, refused and/or
9    neglected to work with Plaintiff in any reasonable way to avoid
10   foreclosure during the time of his financial difficulties" or "to
11   disclose to Plaintiff what options were available to the Plaintiff,
12   to avoid foreclosure."  <u>Id.</u> at 15, ¶¶ 45-46, 48.  "Instead, the
13   purported lender/servicer secretly was transferring the Deed of
14   Trust and . . . has attempted to foreclose, without notice to
15   Plaintiff."  <u>Id.</u> at ¶ 47.

16       "Defendant" also failed "to evaluate the particular
17   circumstances surrounding Plaintiff's claimed default; failed to
18   evaluate Plaintiff or the subject property; failed to determine
19   Plaintiff's capacity to pay the monthly payment or a modified
20   payment amount; failed to ascertain the reason for Plaintiff's
21   claimed default, or the extent of Plaintiff's interest in keeping
22   the Subject Property"; "failed, refused and/or neglected to give .
23   . . Plaintiff the opportunity to cooperate in resolving the debt";
24   and "purposefully deceived Plaintiff that the Mortgage modification
25   was proceeding as planned."  <u>Id.</u> at 15-16, ¶¶ 50-52.

26       Furthermore, the Deed of Trust and Note in the mortgage upon

4

1    which the foreclosure action is premised was transferred in such a

2    manner that it "is no longer held by the same entity or party" and

3    "[t]he foreclosing entity filing the foreclosure . . . has no

4    pecuniary interest in the mortgage loan . . . has no firsthand

5    knowledge of the loan, [and] no authority to testify or file

6    affidavits as to the validity of the loan documents or the

7    existence of the loan." Id. at 4-5, ¶ 21.[3]

8         Plaintiff alleges that "[o]n or about May 16, 2007, Plaintiff

9    executed a written deed of trust and security instrument, with

10   Conduit as the lender and Old Republic as the trustee," and that

11   the "deed of trust and security has never been transferred from

12   Conduit, to the foreclosing entity, Power Default or TD Servicing."

13   Id. at 9, ¶ 37. Instead, the deed of trust was "transferred to an

14   unknown entity" at "the time of execution in May 2007, or was

15   transferred to other unnamed entities and . . . the parties

16   claiming a right or beneficial interest in the Deed of Trust" have

17   no legitimate claims thereon.    Id.

18        Plaintiff also alleges that Defendant American Brokers Conduit

19   ("Conduit"), the original "'lender' on the Deed of Trust," was "not

20   the actual lender or source of the monies that funded the loan,"

21   but instead, "[t]he money to fund the loan came from investors."

22   Id. at 4, ¶ 21. Conduit "acted merely as a broker for the purpose

23   of obtaining Plaintiff's signature on loan documents and . . .

24

25        [3] The paragraph numbering on pages 4-5 of Plaintiff's
     Complaint, ECF No. 2, is non-sequential; following paragraph 21,
26   the paragraphs begin with 17.

1  [was] never the lender or owner of the beneficial interest in the

2  Deed of Trust or the obligation purportedly secured thereby." Id.

3      Plaintiff alleges that "[t]he true originators of the loan

4  immediately and simultaneously securitized . . . the note through

5  the means of conversion of an Article III negotiable Instrument

6  (U.C.C.) into Article IX (U.C.C.) non-negotiable paper." Id. at 5,

7  ¶ 17.

8      Plaintiff further alleges that "[t]he obligations reflected by

9  the Note have been satisfied in whole or in part because the

10 investors who furnish the funding for these loans have been paid to

11 the degree that extinguishments of the debts has occurred," but

12 Defendants "continue to cloud the title and illegally collect

13 payments and attempt to foreclose upon the property . . . when they

14 do not have lawful right to foreclose." Id. at ¶ 18.

15     Defendant Mortgage Electronic Registration Systems, Inc.

16 ("MERS") was "named as . . . beneficiary on the Deed of Trust," but

17 "[t]he mortgage loan assigned to MERS . . . is, at most, an

18 unsecured debt," which can only be collected by "unknown parties

19 [who] have not come forward in this case." Id. at 4-6, ¶ 21, 19.

20     Certain employees of Defendant Power Default Services, Inc.,

21 formally known as AHMSI Default Services, Inc. ("Power Default")

22 "executed and notarized forged documents as to the ownership of the

23 loan." Id. at 6, ¶ 20. Power Default are "special Corporate

24 Trustees with limited ministerial duties," which "do not include

25 any remedial actions as they relate to the assets of the [Real

26 Estate Mortgage Investment Conduit ("REMIC")] Trust." Id. at 6, ¶

21.   "The  [REMIC]  Trust  participants  have  executed  Trust Agreements,  under  oath,  with  the  Security  Exchange  Commission ('SEC'),  and  the  Internal  Revenue  Service  ('IRS'),  as  mortgage asset 'pass-through' entities wherein they can never own or manage the mortgage loan assets in the REMIC Trust."   Id.

According to Plaintiff, the "[c]hain of [m]ortgage assignment is broken as the assignees in the chain of title were never the mortgagee of record under a Mortgage Assignment and have absolutely no legal tie to the investors in the Trust."   Id. at 9, ¶ 35.

That is, "[e]very mortgage in the Trust should have been publicly recorded in Placer County where the property is located," but "[n]o such recording exists in the Placer County records." Id. at ¶ 22.[4] "The Promissory Note was never conveyed pursuant to the  Trust  mandates  and  the  mortgages  were  never  conveyed  or recorded pursuant to the proper chain of custody and Assignment within the Trust Agreement(s)."   Id.

Plaintiff  further  alleges  that  Defendants  "fraudulently recorded" Plaintiff's mortgage loan "on or about July 20, 2009, in an attempt to transfer a Mortgage Assignment into a REMIC after that REMIC's 'cut off' and 'closing dates'," as "listed in the prospectus."   Id. at 7, ¶ 26, 27.   That is, "[t]he assignment of Plaintiff's mortgage was signed and notarized many years after the actual date of the 'loan' and the date listed with the SEC and IRS

---

[4] Obviously, this is a mixed conclusion of law and allegation of  fact.   It also reflects the difficulty of parsing out plaintiff's allegations of fact from assertions of law.

1  as the 'Closing' of the REMIC." <u>Id.</u> at 9, ¶ 36.

2      Furthermore, Plaintiff "was never informed" that his "'loan'

3  was actually the proceeds from the sale of securities." <u>Id.</u> at 8,

4  ¶ 30.

5      Plaintiff specifically alleges the following deficiencies in

6  the chain of title: (1) on June 17, 2009, Defendant Old Republic

7  Title Company ("Old Republic") was substituted as trustee by AHMSI

8  Default, but that substitution of trustee was not filed with the

9  recorder's office; and (2) "no notarized declaration of compliance"

10 was filed in support of the "Notice of Default and Election to Sell

11 Under Deed of Trust," which was filed on June 23, 2009, and was

12 signed by an "illegible signature," by "Karlyn Gleaves, Authorized

13 Agent, without stating any corporate *signatory* capacity," and "by

14 LSI, a purported 'agent' of TD Service, which purports to be an

15 agent 'for the beneficiary' who is unnamed." <u>Id.</u> at 10-14, ¶ 39,

16 40.

17      Plaintiff further alleges that on July 20, 2009, after the

18 Notice of Default had been filed, "MERS attempt[ed] to assign all

19 beneficial interest in the original Deed of Trust to American Home"

20 and, on the same date, American Home assigned the deed of trust to

21 "Deutsche for Harborview Trust by American Home." <u>Id.</u> at 11, 14,

22 ¶¶ 39, 41, 42. In relation to these assignments, Plaintiff draws

23 attention to "the fact that both the MERS and the American Home

24 Assignments of the Deeds of Trust . . . are signed by 'Korell Harp,

25 Vice President,' wherein Korell Harp is purportedly Vice President

26 of both MERS and American Home," and "[t]he Korell Harp signatures

8

1  are notarized by a notary in Fulton County, Georgia, which would

2  have required Korell Harp to have repeatedly traveled to Fulton

3  County, Georgia to sign documents." Id. at 14-15, ¶ 43.

4      Plaintiff alleges that the "Notice of Trustee's Sale, dated

5  May 13, 2010, is . . . fatally defective" because it "was signed by

6  Power Default, citing that it received a written Declaration of

7  Default from the original beneficial interest holder," which was

8  "false as the [Notice of Default] was filed by TD Service, when

9  Conduit was the original lender and beneficial interest holder."

10 Id. at 15, ¶ 44.

11     Finally, Plaintiff alleges that "Defendants qualified as a

12 provider of information to the Credit Reporting Agencies, including

13 but not limited to Experian, Equifax and Trans Union, under the

14 fair credit reporting act," and "wrongfully, improperly, and

15 illegally reported negative information as to the Plaintiff to one

16 or more credit reporting agencies, resulting in Plaintiff's having

17 negative information on his credit reports and the lowering of his

18 FICO scores." Id. at 20, ¶ 79. Plaintiff adds that "[t]he

19 negative information included . . . an excessive amount of debt

20 into which Plainitff was tricked into . . . signing" and that

21 "Plaintiff has paid each and every payment on time from the time of

22 the closing of the loan and until Plaintiff's default." Id. at 20,

23 ¶ 79(A)-(B).

24     Plaintiff brings causes of action under the following

25 theories: (1) violations of the Home Ownership Equity Protection

26 Act ("HOEPA"); (2) violations of the Real Estate Settlement

1  Procedures Act ("RESPA"); (3) violations of the Truth in Lending
2  Act ("TILA"); (4) violations of the Fair Credit Reporting Act
3  ("FCRA"); (5) fraudulent misrepresentation; (6) breach of fiduciary
4  duty; (7) unjust enrichment; (8) civil conspiracy; (9) civil RICO
5  violations; (10) quiet title; (11) usury and fraud; (12) wrongful
6  foreclosure; and (13) breach of trust instrument.  Id. at 16-30.

7                 **II. STANDARD FOR MOTION TO DISMISS**

8        A Federal Rule of Civil Procedure 12(b)(6) motion challenges
9  a complaint's compliance with the pleading requirements provided by
10 the Federal Rules.  Under Federal Rule of Civil Procedure 8(a)(2),
11 a pleading must contain a "short and plain statement of the claim
12 showing that the pleader is entitled to relief."  The complaint
13 must give defendant "fair notice of what the claim is and the
14 grounds upon which it rests."  Bell Atlantic v. Twombly, 550 U.S.
15 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal
16 quotation and modification omitted).

17       To meet this requirement, the complaint must be supported by
18 factual allegations.  Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct.
19 1937, 1950, 173 L.Ed.2d 868 (2009).  "While legal conclusions can
20 provide the framework of a complaint," neither legal conclusions
21 nor conclusory statements are themselves sufficient, and such
22 statements are not entitled to a presumption of truth.  Id. at
23 1949-50.  Iqbal and Twombly therefore prescribe a two step process
24 for evaluation of motions to dismiss.  The court first identifies
25 the non-conclusory factual allegations, and the court then
26 determines whether these allegations, taken as true and construed

1   in the light most favorable to the plaintiff, "plausibly give rise

2   to an entitlement to relief." Id.; Erickson v. Pardus, 551 U.S.

3   89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).[5]

4        "Plausibility," as it is used in Twombly and Iqbal, does not

5   refer to the likelihood that a pleader will succeed in proving the

6   allegations.    Instead, it refers to whether the non-conclusory

7   factual allegations, when assumed to be true, "allow[] the court to

8   draw the reasonable inference that the defendant is liable for the

9   misconduct alleged." Iqbal, 129 S.Ct. at 1949. "The plausibility

10  standard is not akin to a 'probability requirement,' but it asks

11  for more than a sheer possibility that a defendant has acted

12  unlawfully." Id. (quoting Twombly, 550 U.S. at 557).   A complaint

13  may fail to show a right to relief either by lacking a cognizable

14  legal theory or by lacking sufficient facts alleged under a

15  cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901

16  F.2d 696, 699 (9th Cir. 1990).

17                          **III. ANALYSIS**[6]

18

19        [5] The court also may consider certain limited evidence on a
    motion to dismiss.  As an exception to the general rule that non-
20  conclusory factual allegations must be accepted as true on a motion
    to dismiss, the court need not accept allegations as true when they
21  are contradicted by this evidence.  See Mullis v. United States
    Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); Durning v. First
22  Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

23        [6] In separate actions filed in this district, Plaintiff's
    counsel appears to have pled nearly identical claims to those
24  presented here, in the same order, and with the same apparent
    deficiencies. See, e.g., Tilley v. Ampro Mortg., No. 2:11-cv-1134,
25  2011  WL  5921415  (E.D.  Cal.  2011);  Von  Brincken  v.
    Mortgageclose.Com, Inc., No. 10-cv-02153, 2011 WL 2621010 (E.D.
26  Cal. 2011).

**A. Judicial Notice**

Defendants American Home Mortgage Servicing, Inc. ("AHMSI"), Power Default Services, Inc. ("PDSI"), and Deutsche Bank National Trust Company ("Deutsche") have requested that the court take judicial notice of: (1) the Deed of Trust, recorded May 16, 2007 in the Official Records of Sacramento County as Instrument No. 2007-0049201-00; (2) the Notice of Default and Election to Sell Under Deed of Trust, recorded June 23, 2009 in the Official Records of Sacramento County as Instrument No. 2009-0054395-00; (3) an Assignment of Deed of Trust recorded August 9, 2010 in the Official Records of Sacramento County as Instrument No. 2010-0060687-00; (4) the Substitution of Trustee, recorded August 9, 2010 in the Official Records of Sacramento County as Instrument No. 2010-0060688-00; (5) the Notice of Trustee's Sale, recorded September 7, 2007 in the Official Records of Sacramento County as Instrument No. 2010-0070263-00; (6) the Trustee's Deed Upon Sale, recorded December 2, 2010 in the Official Records of Sacramento County as Instrument No. 2010-0100031-00; (7) Plaintiff's Complaint filed July 28, 2009 in this court in Case No. 2:09-cv-02081; and (8) this court's order, filed June 22, 2010, dismissing Plaintiff's first lawsuit in Case No. 2:09-cv-02081. Defs' Req., ECF No. 13. Plaintiff does not oppose these requests for judicial notice.

Defendant T.D. Service Company ("T.D.") has requested that the court take judicial notice of: (1) a Deed of Trust, recorded May 16, 2007 as instrument number 2007-0049201-00 with the Placer County Recorder; (2) a Notice of Default and Election to Sell Under

Deed of Trust, recorded June 23, 2009 as instrument number 2009-0054395-00 with the Placer County Recorder; (3) a Substitution of Trustee recorded July 29, 2009 as instrument number 2009-0066444-00 with the Placer County Recorder; (4) Notice of Trustee's Sale recorded September 7, 2010 as instrument number 2010-0070263-00 with the Placer County Recorder; and (5) a Trustee's Deed Upon Sale recorded December 2, 2010 as instrument number 2010-0100031-00 with the Placer County Recorder.   Def's Mot., ECF No. 38.   Plaintiff similarly does not oppose these requests for judicial notice.

Facts subject to judicial notice may be considered on a motion to dismiss.  Mullis v. United States Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987).  The court can judicially notice matters of public record.  See Fed. R. Evid. 201(b); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (citing Mack v. South Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir. 1986)).  However, a court may not take judicial notice of a fact that is "subject to reasonable dispute."  Lee, 250 F.3d at 689.

Because each of the documents submitted by Defendants for judicial notice is a matter of public record, the court takes judicial notice of the fact that the documents were filed, the dates of their filing, and the representations made thereon.

**B. Home Ownership Equity Protection Act ("HOEPA"), Real Estate Settlement Procedures Act ("RESPA"), and Truth in Lending Act ("TILA") Claims**

Under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et seq., and its implementing regulations, 12 C.F.R. § 226.1, et seq.,

1  a lender must make certain disclosures to a borrower before the

2  consummation of a loan, including the finance charges, the annual

3  percentage rate, and the right to rescind the transaction.   15

4  U.S.C. § 1638(a)&(b); 12 C.F.R. §§ 226.17(b), 226.23(b);

5  see Yamamoto v. Bank of New York, 329 F.3d 1167, 1170 (9th Cir.

6  2003).   TILA provides causes of action for rescission and damages

7  if the lender does not make the required disclosures.

8       The Homeowner Equity Protection Act ("HOEPA"), 15 U.S.C. §§

9  1639, et seq., is an amendment to TILA, designed to "combat

10  predatory lending," and applies only to certain high cost loans.

11  In re First Alliance Mortgage Co., 471 F.3d 977, 984 n.1 (9th Cir.

12  2006); Hamilton v. Bank of Blue Valley, 746 F.Supp.2d 1160, 1179

13  (E.D. Cal. 2010) (HOEPA is amendment to TILA).

14       Both TILA and HOEPA allow for rescission of certain loans and

15  for damages, only so long as the borrower acts within specified

16  time periods.   Tilley v. Ampro Mortg., No. 2:11-cv-1134, 2011 WL

17  5921415, at *4 (Nov. 28, 2011).   Under 15 U.S.C. § 1635(f), if the

18  lender fails to provide notice of rescission rights, the usual

19  three day period is extended to three years from the date of the

20  consummation of the transaction.   Id.   Under 15 U.S.C. § 1640(e),

21  if the borrower seeks damages for TILA and HOEPA violations, he

22  must file his action within one year of the transaction.   Id.

23  (citing Miquel v. Country Funding Corp., 309 F.3d 1161, 1163 (9th

24  Cir. 2002) (rescission); Edstrom v. Ndex West, LLC, No. 2:10-cv-

25  00105, 2010 WL 4069482, at *3 (E.D.Cal. Oct. 18, 2010) (damages)).

26  It is established in this circuit that "the failure to make the

1 required disclosures occurred, if at all, at the time the loan

2 documents were signed." <u>Id.</u> (citing <u>Meyer v. Ameriquest Mortgage</u>,

3 342 F.3d 899, 902 (9th Cir. 2003); <u>King v. State of California</u>, 784

4 F.2d 910, 915 (9th Cir. 1986)).

5     Here, Plaintiff does not dispute that the loan documents were

6 signed on or around May 9, 2007, and that the complaint in this

7 action was filed more than three years later, on January 31, 2011.

8 Thus, Plaintiff's TILA and HOEPA claims for damages and rescission

9 were untimely filed.

10     There is no equitable tolling of any rescission claim: §

11 1635(f) is a statute of repose, not a statute of limitations, and

12 as such is not subject to equitable tolling.  <u>Id.</u> at *5 (citing

13 <u>Beach v. Ocwen Federal Bank</u>, 523 U.S. 410, 412, 118 S.Ct. 1408, 140

14 L.Ed.2d 566 (1998) ("we . . . hold that § 1635(f) completely

15 extinguishes the right of rescission at the end of the 3-year

16 period"); <u>Lane v. Vitek Real Estate Indus. Grp.</u>, 713 F.Supp.2d

17 1092, 1099 (E.D. Cal. 2010)).  Thus, Plaintiff's TILA and HOEPA

18 rescission claims are dismissed, with prejudice.

19     As to the damages claims brought under TILA and HOEPA,

20 Plaintiff's complaint does not allege sufficient facts to be

21 entitled to equitable tolling.  "[T]he doctrine of equitable

22 tolling may, in the appropriate circumstances, suspend the

23 limitations period until the borrower discovers or had reasonable

24 opportunity to discover the fraud or nondisclosures that form the

25 basis of the TILA action." <u>King v. California</u>, 784 F.2d 910, 915

26 (9th Cir. 1986).  While the applicability of the equitable tolling

1   doctrine often depends on matters outside the pleadings, <u>Supermail</u>

2   <u>Cargo, Inc. v. United States</u>, 68 F.3d 1204, 1206 (9th Cir. 1995),

3   dismissal may be appropriate when a plaintiff fails to allege facts

4   suggesting that he did not have a reasonable opportunity to

5   discover the violation.   <u>See</u> <u>Meyer v. Ameriquest Mortg. Co.</u>, 342

6   F.3d 899, 902-03 (9th Cir. 2003); <u>Hubbard v. Fidelity Fed. Bank</u>, 91

7   F.3d 75, 79 (9th Cir. 1996).   To establish excusable delay, a

8   plaintiff must show, <u>inter alia</u>, his due diligence until discovery

9   of the operative facts that are the basis of his cause of action.

10  <u>See</u> <u>Edstrom v. Ndex West. LLC</u>, No. 2:10-cv-00105, 2010 WL 4069482,

11  at *3 (citing <u>Federal Election Comm'n v. Williams</u>, 104 F.3d 237,

12  240-41 (9th Cir. 1996)).   Plaintiff argues, in his opposition, that

13  he "is a lay person . . . [who] reasonably relied upon the

14  representations of the Defendants in agreeing to execute the

15  mortgage loan documents," and that "a reasonable person would not

16  have been able to discover the alleged violations as the actions by

17  Defendants . . . were matters of Defendants' internal business and

18  accounting to which an average person has no access."   Pl's Opp'n,

19  ECF No. 20, at 5.   Even if those assertions are credited, Plaintiff

20  has still failed to allege any facts either: (1) explaining why he

21  had no reasonable opportunity to discover the facts underlying the

22  alleged violations within the statutory period, when he was

23  apparently able to discover the violations thereafter; or (2)

24  showing diligence on his part in attempting to discover the facts

25  underlying the alleged violations.   Plaintiff's TILA and HOEPA

26  damages claims are therefore dismissed, without prejudice.

1        Under the Real Estate Procedures Act ("RESPA"), a lender may
2   not charge a borrower fees related to the mortgage other than for
3   services actually performed.    12 U.S.C. § 2607(b); <u>Jensen v.</u>
4   <u>Quality Loan Serv. Corp.</u>, 702 F.Supp.2d 1183, 1194 (E.D. Cal.
5   2010).   A claim under § 2607 must be brought within a year after
6   the date of the occurrence of the violation.   <u>Brewer v. Indymac</u>
7   <u>Bank</u>, 609 F.Supp.2d 1104, 1117 (E.D. Cal. 2009); 12 U.S.C. § 2614.
8   As noted above, Plaintiff consummated this real estate loan on or
9   around May 9, 2007; the instant action, filed on January 31, 2011,
10  is not timely.

11       As with TILA and HOEPA damage claims, the RESPA statute of
12  limitations has, in this district, been considered subject to
13  equitable tolling.   <u>Id.</u> at 1117-18; <u>Yulaeva v. Greenpoint Mortgage</u>
14  <u>Funding, Inc.</u>, No. 2:09-cv-1504, 2009 WL 2880393, at *14 (E.D. Cal.
15  Sept. 3, 2009).   However, as stated above, Plaintiff has failed to
16  allege facts to establish excusable delay.   Thus, Plaintiff's RESPA
17  claim is dismissed, without prejudice.

18  **C. Fair Credit Reporting Act ("FCRA") Claim**

19       Among other things, the Fair Credit Reporting Act imposes
20  general duties on those who provide credit information to credit
21  reporting agencies or "furnishers."   <u>Gorman v. Wolpoff & Abramson,</u>
22  <u>LLP</u>, 584 F.3d 1147, 1153-54 (9th Cir. 2009), *cert. denied sub nom.*
23  <u>FIA Card Services, N.S. v. Gorman</u>, -- U.S. --, 131 S.Ct. 71, 178
24  L.Ed.2d 23 (2010).   Under 15 U.S.C. § 1681s-2(a), a furnisher must
25  provide accurate information; this section does not, however,
26  create a private right of action.   <u>Id.</u>; <u>Mitzel v. HSBC Card Serv.,</u>

1  Inc., No. 8:10-cv-00392, 2011 WL 2848716, at *3 (D.Neb. July 15,

2  2011); 15 U.S.C. § 1681s-2(d).   Under 15 U.S.C. § 1681s-2(b), a

3  furnisher  must  conduct  an  investigation  into  the  accuracy  of

4  information  when  it  receives  a  report  from  a  credit  reporting

5  agency that a consumer disputes the information.   Gorman, 584 F.3d

6  at 1154.   This section does create a private right of action, but

7  the  duty  arises  only  when  the  agency,  not  the  consumer,  gives

8  notice that the consumer disputes the information.   Id.; Lee v.

9  Wells Fargo Home Mortgage, No. 4:11-cv-00633, 2011 WL 5025877, at

10 *2 (W.D. Mo. Oct. 21, 2011).

11      Here, Plaintiff's complaint does not allege facts showing that

12 he  had  a  dispute  with  a  credit  reporting  agency  regarding  the

13 accuracy of an account, that the credit reporting agency notified

14 the furnisher of the information, or that the furnisher failed to

15 take remedial measures outlined in the statute.   See Matracia v.

16 J.P. Morgan Chase Bank, No. 2:11-cv-00190, 2011 WL 1833092, at *3

17 (E.D. Cal. May 12, 2011) (using the same rationale for dismissing

18 the plaintiff's FCRA claim).   Accordingly, Plaintiff's FCRA claim

19 is dismissed without prejudice.

20 **D. Fraudulent Misrepresentation Claim**

21      In California, a claim of fraudulent misrepresentation has

22 five  elements:  (1)  misrepresentation,  which  encompasses  false

23 representation, concealment, and nondisclosure; (2) knowledge of

24 falsity; (3) intent to defraud; (4) justifiable reliance; and (5)

25 damage.  Lazar v. Superior Ct., 12 Cal.4th 631, 638, 49 Cal.Rptr.2d

26 377, 909 P.2d 981 (1996); Champlaie v. BAC Home Loans Serv., LP,

706 F.Supp.2d 1029, 1058 (E.D. Cal. 2009); <u>Dooms v. Federal Home Loan Mortgage Corp.</u>, No. 1:11-cv-00352, 2011 WL 1232989, at *13 (E.D. Cal. March 31, 2011).  A fraud claim against a corporation must provide information about the person who made the representations challenged as fraudulent, and his or her authority to speak.  <u>Dooms</u>, 2011 WL 1232989, at *14.

In addition to the usual pleading requirements of Rule 8, allegations of fraud must meet heightened pleading standards. Under Rule 9(b), a plaintiff who alleges fraud "must state with particularity the circumstances constituting the fraud," but may "aver[] generally" the state of mind animating the fraud.  The pleading must "'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" <u>Sanford v. MemberWorks, Inc.</u>, 625 F.3d 550, 558 (9th Cir. 2010) (quoting <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1124 (9th Cir. 2009)).  To avoid dismissal, the complaint must describe the time, place, and specific content of the false representations and identify the parties to the misrepresentations.  <u>Id.</u>; <u>Dooms</u>, 2011 WL 1232989, at *14.  In addition, a plaintiff may not "lump multiple defendants together" but rather must "differentiate their allegations." <u>Destfino v. Reiswig</u>, 630 F.3d 952, 958 (9th Cir. 2011) (quoting <u>Cisneros v. Instant Capital Funding Grp., Inc.</u>, 263 F.R.D. 595, 606-07 (E.D. Cal. 2009)).

Here, Plaintiff's fraudulent misrepresentation claims appear to be based on the loan itself and possibly on later assignments

19

1  and recordations.    However, Plaintiff fails to plead with
2  particularity the time, place, specific content, and the identities
3  of any parties to the misrepresentations.  Plaintiff only states in
4  a conclusory fashion that conduct was "fraudulent," with no
5  supporting facts or assertions, and brings this claim against all
6  "Defendants."   As such, Plaintiff's fraudulent misrepresentation
7  claims fall short of the specificity required by the Federal Rules,
8  and are dismissed, without prejudice.

9  **E. Claim for Breach of Fiduciary Duty**

10      The elements of a claim of breach of fiduciary duty are: (1)
11  the existence of a fiduciary duty; (2) a breach of that duty; and
12  (3) damage as a result of the breach.  <u>Rosal v. First Federal Bank</u>
13  <u>of California</u>, 671 F.Supp.2d 1111, 1128 (N.D. Cal. 2009).   Under
14  California law, there is no fiduciary relationship between a lender
15  and a borrower when "the institution's involvement in the loan
16  transaction does not exceed the scope of its conventional role as
17  a mere lender of money."   <u>Nymark v. Heart Fed. Savings & Loan</u>
18  <u>Ass'n.</u>, 231 Cal.App.3d 1089, 1096, 283 Cal.Rptr. 53 (1991); <u>Rosal</u>,
19  671 F.Supp.2d at 1129.   Courts have similarly determined that a
20  loan servicer owes no fiduciary duty to a borrower "when its
21  involvement in the transaction does not exceed the scope of its
22  conventional role as a loan servicer . . . such that it assumed a
23  fiduciary duty."   <u>Huerta v. Ocwen Loan Servicing, Inc.</u>, No. 5:09-
24  cv-05822, 2010 WL 728223, at *4 (N.D. Cal. Mar. 1, 2010); <u>Walters</u>
25  <u>v. Fidelity Mortgage of California, Inc.</u>, 730 F.Supp.2d 1185, 1205
26  (E.D. Cal. 2010).

1    Here, Plaintiff fails to allege any facts to show that any of
2  the Defendants owe fiduciary duties to Plaintiff.  <u>See</u> <u>Barbara A.</u>
3  <u>v. John G.</u>, 145 Cal.App.3d 369, 382, 193 Cal.Rptr. 422 (1983) (A
4  fiduciary relationship exists when one of the parties to a
5  transaction "is in duty bound to act with the utmost good faith for
6  the benefit of the other party.").  That is, Plaintiff has pled no
7  facts alleging that the Defendants, as either lenders or loan
8  servicers, acted in ways that exceeded the scope of their
9  conventional roles.  Plaintiff's breach of fiduciary claim is,
10 therefore, dismissed without prejudice.
11 **F. Claim for Unjust Enrichment**
12    The elements of an unjust enrichment claim are "'receipt of a
13 benefit and [the] unjust retention of the benefit at the expense of
14 another.'" <u>Peterson v. Cellco Partnership</u>, 164 Cal.App.4th 1583,
15 1593, 80 Cal.Rptr.3d 316 (2008) (quoting <u>Lectrodryer v. SeoulBank</u>,
16 77 Cal.App.4th 723, 726, 91 Cal.Rptr.2d 881 (2000)).  It is not an
17 independent cause of action, but rather is pled as part of a quasi-
18 contract claim "in order to avoid unjustly conferring a benefit
19 upon a defendant where there is no valid contract." <u>Ram v.</u>
20 <u>Wachovia Mortg., FSB</u>, No. 2:10-cv-01834, 2011 WL 1135285, at *9
21 (E.D. Cal. Mar. 25, 2011).
22    Here, Plaintiff lumps all Defendants together and fails to
23 identify with specificity which Defendants received an unjust
24 benefit, why any benefits received should be considered improper,
25 or what and when any monies were in fact received.  Plaintiff's
26 pleadings are, therefore, insufficient to state a claim for unjust

1  enrichment.  See, e.g., Tilley v. Ampro Mortg., No. 2:11-cv-01134,

2  2011 WL 5921415, at *9 (E.D. Cal. Nov. 28, 2011) (citing Gomez v.

3  World Savings Bank FSB, No. 1:10-cv-1463, 2010 WL 5280004, at *5

4  (E.D. Cal. Dec. 13, 2010); Jacob v. Aurora Loan Servs., No. 3:10-

5  cv-01789, 2010 WL 2673128, at *4 (N.D. Cal. July 2, 2010)).

6  Because Plaintiff fails to give any of the Defendants "fair notice

7  of what the claim is and the grounds upon which it rests," Bell

8  Atlantic v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d

9  929 (2007), Plaintiff's claim for unjust enrichment is dismissed,

10 without prejudice.

11 **G. Claim for Civil Conspiracy to Defraud**

12     The elements of a cause of action for civil conspiracy in

13 California are the formation and operation of the conspiracy,

14 wrongful conduct in furtherance of the conspiracy, and damage

15 resulting to the plaintiff from an act or acts done in furtherance

16 of the common design.  Kidren v. Movie Acquisition Corp., 40

17 Cal.App.4th 1571, 1581, 47 Cal.Rptr.2d 752 (1995); see also

18 Doctors' Co. v. Superior Ct., 49 Cal.3d 39, 44, 260 Cal.Rptr. 183,

19 775 P.2d 508 (1989); Champlaie, 706 F.Supp.2d at 1057.  Civil

20 conspiracy is not an independent tort but rather a way of imposing

21 liability on those who share a common plan with tortfeasors.

22 Applied Equipment Corp., 7 Cal.4th at 510-11, 28 Cal.Rptr.2d 475,

23 869 P.2d 454.

24     Like civil conspiracy in general, a conspiracy to defraud is

25 not an independent tort, but rather "only serves as a theory of

26 liability for claims of fraud."  Lane v. Vitek Real Estate Indus.

Group, 713 F.Supp.2d at 1103 n.1; Mehrtash v. Mehrtash, 93 Cal.App.4th 75, 82, 112 Cal.Rptr.2d 802 (2001) ("there is no separate tort of civil conspiracy, and there is no civil action for conspiracy to commit a recognized tort unless the wrongful act itself is committed . . . ."). In California, "nondisclosure is not ordinarily actionable unless the defendant is a fiduciary with a duty to disclose," but "active concealment or suppression of facts by a nonfiduciary is the equivalent of a false representation, i.e., actual fraud." Younan v. Equifax, Inc., 111 Cal.App.3d 498, 512, 169 Cal.Rptr. 478 (1980). Because a conspiracy to defraud requires that the defendants engaged in fraud, the strict pleading requirements of Rule 9(b) apply. Lane, 713 F.Supp.2d at 1103.

As stated above, Plaintiff fails to allege sufficient facts to establish a claim for fraud. Thus, Plaintiff cannot establish a claim for civil conspiracy to defraud. Furthermore, Plaintiff also fails to make any non-conclusory factual allegations to show the formation or operation of a conspiracy, any wrongful conduct in furtherance of the conspiracy, or any damage resulting to the Plaintiff from any acts done in furtherance of the common design.[7] Additionally, as with Plaintiff's other claims, Plaintiff fails to differentiate between the Defendants in any way that could provide them with fair notice of the claims against them and the grounds

---

[7] Plaintiff's counsel is reminded that the bare recitation of a legal standard is not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009).

1   upon which they rest.  <u>See</u> <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544,

2   555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  Thus, Plaintiff's

3   claim for civil conspiracy is dismissed, without prejudice.

4   **H. Claim for RICO Violations**

5        Under the Racketeer Influenced and Corrupt Organizations Act

6   ("RICO"), 18 U.S.C. § 1961, et seq., it is unlawful "for any person

7   employed by or associated with any enterprise . . . to conduct or

8   participate, directly or indirectly, in the conduct of such

9   enterprise's affairs through a pattern of racketeering activity."

10  18 U.S.C. § 1962(c).  "Racketeering activity in turn, is defined to

11  include a number of generically specified criminal acts as well as

12  the commission of one of a number of listed predicate offenses."

13  <u>Sosa v. Directv, Inc.</u>, 437 F.3d 923, 939 (9th Cir. 2006).   A

14  "pattern of racketeering activity" requires at least two acts.  18

15  U.S.C. § 1961(1), (5) & (6).

16       Although § 1962 defines a crime, a plaintiff may seek civil

17  remedies for RICO violations if he has been "injured in his

18  business or property by reason of a violation of section 1962 . .

19  . ."  18 U.S.C. § 1964(c).  The elements of a RICO claim are: (1)

20  conduct; (2) of an enterprise; (3) through a pattern; (4) of

21  racketeering activities (known as "predicate acts"); (5) causing

22  injury to the plaintiff's "business or property." <u>Grimmett v.</u>

23  <u>Brown</u>, 75 F.3d 506, 510 (9th Cir. 1996).

24       In addition, under §§ 1962(d) and 1964(c), a person may be

25  civilly liable if he conspired to violate any of the subsections of

26  § 1962.  <u>Beck v. Prupis</u>, 529 U.S. 494, 500, 120 S.Ct. 1608, 146

1 L.Ed.2d 561 (2000).  A RICO conspiracy presupposes the existence of
2 a substantive violation of RICO, but a conspirator may be liable
3 even if he does not commit or agree to commit "the two or more
4 predicate acts requisite to the underlying offense."  Salina v.
5 United States, 522 U.S. 52, 65, 118 S.Ct. 469, 139 L.Ed.2d 352
6 (1997); Howard v. America Online, Inc., 208 F.3d 741, 751 (9th Cir.
7 2000).

8      Here, Plaintiff's claim centers on Defendants' alleged
9 predatory lending practices and general fraud.  Neither fraud, in
10 and of itself, nor the creation of fraudulent loan documents are
11 predicate offenses under RICO.  Tilley v. Ampro Mortg., No. 2:11-
12 cv-1134, 2011 WL 5921415, at *12 (E.D. Cal. Nov. 28, 2011) (citing
13 Derakhshan v. Mortgage Electronic Registration Systems, No.
14 8:08cv1185, 2009 WL 3346780, at *4 (C.D. Cal. Oct. 13, 2009)
15 (predatory lending is not a predicate offense for RICO)).
16 Plaintiff's claims for civil RICO violations therefore fail and are
17 dismissed without prejudice.

18 **I. Claim to Quiet Title**

19      The purpose of a quiet title action is to establish one's
20 title against adverse claims to real property.  A basic requirement
21 of an action to quiet title is an allegation that plaintiffs "are
22 the rightful owners of the property, i.e.[,] that they have
23 satisfied their obligations under the Deed of Trust."  Kelley v.
24 Mortg. Elec. Registration Sys., Inc., 642 F.Supp.2d 1048, 1057
25 (N.D. Cal. 2009).  Put another way, tender of the indebtedness is
26 required to quiet title in California.  Aquilar v. Boci, 39

1  Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) ("The cloud upon his

2  title persists until the debt is paid."); <u>Kelley v. Mortgage</u>

3  <u>Electronic Registration Systems Inc.</u>, 642 F.Supp.2d 1048, 1057

4  (N.D. Cal. 2009). "A tender must be one of full performance and

5  must be unconditional to be valid." <u>Arnolds Mgmt. Corp. v.</u>

6  <u>Eischen</u>, 158 Cal.App.3d 575, 578, 205 Cal.Rptr. 15 (1984)

7  (citations omitted).

8      Although Plaintiff alleges in his complaint that "[t]he

9  obligations reflected by the Note have been satisfied in whole or

10  in part because the investors who furnish the funding for these

11  loans have been paid to the degree that extinguishments of the

12  debts has occurred," the Notice of Default filed on June 23, 2009,

13  which the court judicially noticed, indicates that, as of June 30,

14  2009, Plaintiff was behind in his payments in the amount of

15  $10,826.14.   <u>See</u> Def's Req., ECF No. 13, Ex. 2 ("Notice of

16  Default").  Plaintiff's allegation that his obligations have been

17  satisfied "in part" are insufficient to show full performance.

18  Furthermore, Plaintiff has failed to allege facts that can

19  reconcile his statement that his obligations have been satisfied

20  with the publicly recorded Notice of Default.

21      In his opposition, Plaintiff now argues that "he has never

22  been under any obligation to tender . . . [because] the trust deed

23  is void."  Pl's Opp'n, ECF No. 41, at 7.  However, as discussed

24  further below, Plaintiff has not alleged sufficient facts to

25  establish the invalidity of the trust deed.  Thus, Plaintiff's

26  claim to quiet title is dismissed without prejudice.

**J. Claim for Usury and Fraud**

In California, "[t]he usury laws protect against the oppression of debtors through excessive interest rates charged by lenders." Agapitov v. Lerner, 108 Cal.App.4th 830, 838, 133 Cal.Rptr.2d 837 (2003).  A usury claim has four elements: (1) the transaction must be a loan or forbearance: (2) the interest must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must intend to enter into a usurious transaction.  Ghirardo v. Antonioli, 8 Cal.4th 791, 798, 35 Cal.Rptr.2d 418, 883 P.2d 960 (1994).  An interest rate that exceeds ten percent per annum may be usurious.  Cal. Const. Art. 15 § 1.

Here, Plaintiff does not allege the rate of interest charged on his loan, or that the rate exceeded the maximum rate allowable by law.  Plaintiffs' usury claim is therefore insufficient to state an actionable claim.  See Solano v. America's Serv. Co., No. 2:10-cv-2426, 2011 WL 4500874, at *12 (E.D. Cal. Sept. 27, 2011) (using the same rationale in dismissing a plaintiff's claim for usury).  As stated above, Plaintiff fails to allege sufficient facts to establish a claim for fraud.  Plaintiff's eleventh claim for usury and fraud is therefore dismissed without prejudice.

**K. Claims for Wrongful Foreclosure and Breach of Trust Instrument**

To state a wrongful foreclosure claim, "a plaintiff must allege a credible tender of the amount of the secured debt." Roque v. Suntrust Mortg., Inc., No. 5:09-cv-00040, 2010 WL 546896, at *4 (N.D. Cal. Feb. 10, 2010) (citing Abdallah v. United States Bank,

43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996)); <u>see also</u> <u>Guerrero v. Greenpoint Mortg. Funding, Inc.</u>, No. 10-15333, 2010 WL 4117102, at *1 (9th Cir. Oct. 20, 2010) (stating the plaintiffs "lacked standing to bring a claim for 'wrongful foreclosure,' because they failed to allege actual, full and unambiguous tender of the debt owed on the mortgage."). For the reasons stated above, Plaintiff here fails to allege full tender of the amount of debt owed on the mortgage. Thus, Plaintiff's wrongful foreclosure claim is dismissed without prejudice.

Plaintiff argues that the "Substitution of Trustee was invalid . . . because it was not executed by the Lender, per requirement of the Deed of Trust." Pl's Compl., ECF No. 2, at 29, ¶ 146. Plaintiff continues that "[t]he duly appointed Trustee under the Deed of Trust as of the recording of the Notice of Default on March 23, 2010 was Old Republic," and that "[t]he Notice of Default was recorded prior to the assignment." <u>Id.</u>

Under California's non-judicial foreclosure procedure, a notice of default must be recorded by the trustee, mortgagee, or beneficiary of the deed of trust. Cal. Civ. Code § 2924(a)(1). Plaintiff is correct insofar as the Notice of Default was filed on behalf of Deutsche on June 23, 2009, whereas the assignment of the Deed of Trust and the Substitution of Trustee from the original beneficiary, MERS, and the original trustee, Old Republic, to Deutsche, as both beneficiary and trustee, were not signed until July 28, 2010, and were not recorded until August 9, 2010. <u>See</u> Defs' Req., ECF No. 13, Exs. 2 (Notice of Default), 3

(Assignment-Beneficiary), 4 (Substitution of Trustee).  However,
courts of this district have generally found this argument
unavailing.  <u>See</u>, <u>e.g.</u>, <u>Solano v. America's Servicing Co.</u>, No.
2:10-cv-2426, 2011 WL 4500874, at *4 (Sept. 27, 2011) (citing <u>Wood
v. Aegis Wholesale Corp</u>, No. 1:09-cv-00536, 2009 WL 1948844, at *3
(E.D. Cal. July 6, 2009) ("[A]ny of the beneficiary's authorized
agents" may file the Notice of Default, and "it is immaterial to
the validity of the foreclosure process that MTC filed the Notice
of Default before MTC was officially substituted as trustee.")).

In <u>Pedersen v. Greenpoint Mortgage Funding, Inc.</u>, the court
noted a distinction in California case law between cases in which
the foreclosure was completed *after* the substitution as trustee
took effect (in which case, the foreclosure was valid) and those
cases in which the foreclosure was completed by a party other than
the trustee *before* any substitution of the trustee had occurred (in
which case, the foreclosure was voided).  No. 2:11-cv-00642, 2011
WL 3818560, at * 21 (E.D. Cal. Aug. 29, 2011) (internal citations
omitted).  However, that distinction does not help Plaintiff in the
case at hand.  Here, the Trustee's Deed Upon Sale was signed on
November 30, 2010, and was recorded on December 2, 2010; that is,
the foreclosure was completed after the relevant substitution and
assignment.  <u>See</u> Def's Req., ECF No. 13, Ex. 6 (Trustee's Deed Upon
Sale).

Plaintiff has further failed to allege facts showing that he
was prejudiced by the later recordation of the substitution and
assignment.  <u>See</u>  <u>Fontenot v. Wells Fargo Bank, N.A.</u>, 198

29

1  Cal.App.4th 256, 271-72, 129 Cal.Rptr.3d 467 (2011) (showing of

2  prejudice required).

3      Finally, Plaintiff alleges that Defendants failed to comply

4  with "any expressed provisions of the Deed of Trust." Pl's Compl.,

5  ECF No. 2, at 29, ¶ 149.  With no discernable non-conclusory

6  factual assertions in support, this claim does not meet the

7  applicable pleading standard.  In <u>Shapiro v. Bank of America, N.A.</u>,

8  No. 2:11-cv-00576, 2011 WL 4851145, at *9 (E.D. Cal. Oct. 12,

9  2011), in which Plaintiff's counsel made the same argument, the

10 court noted that "[n]early identical allegations were dismissed as

11 conclusory and vague in <u>Von Brincken v. Mortgageclose.Com, Inc.</u>,

12 No. 2:10-cv-2153, 2011 WL 2621010, at *7 (E.D. Cal. June 30, 2011),

13 and <u>Matracia v. JP Morgan Chase Bank, NA,</u> No. 2:11-cv-190, 2011 WL

14 1833092, at *5-6 (E.D. Cal. May 12, 2011)."  Thus, Plaintiff's

15 claim for breach of trust instrument is dismissed, without

16 prejudice.

17                          **IV. CONCLUSION**

18      For the foregoing reasons, the court GRANTS Defendants'

19 motions to dismiss. Defs' Mots., ECF Nos. 12, 15, 37.  Each of

20 Plaintiff's claims are dismissed without prejudice, except for

21 Plaintiff's TILA and HOEPA rescission claims, which are dismissed

22 with prejudice.

23      IT IS SO ORDERED.

24      DATED:  March 5, 2012.

25

26                              LAWRENCE K. KARLTON
                                SENIOR JUDGE
                                UNITED STATES DISTRICT COURT

                                  30